IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION

```
UNITED STATES OF AMERICA    )
                            )     CRIMINAL ACTION NO.
     v.                     )        2:23cr92-MHT
                            )            (WO)
LAWRENCE COLEY, III         )
```

OPINION AND ORDER

This case is now before the court on defendant Lawrence Coley, III's appeal of the pretrial detention order entered by a United States Magistrate Judge after a hearing. Coley is charged with two counts: distribution of fentanyl resulting in death, in violation of 18 U.S.C. § 841(a)(1); and possession with the intent to distribute fentanyl, also in violation of 18 U.S.C. § 841(a)(1). Following Coley's arrest, the magistrate judge held a hearing and ordered Coley to be detained pending trial. *See* Detention Order (Doc. 15). Pursuant to 18 U.S.C. § 3142, Coley moved this court to review the magistrate judge's detention order and revoke that order. *See* Motion (Doc. 17).

The court reviewed the transcript and evidence presented at the initial hearing (on which both the government and Coley asked the court to rely), held its own hearing on May 2, 2023, received additional evidence, heard additional argument, and conducted an independent and de novo review of the detention issue. For the following reasons, the court agrees that Coley poses a danger to the community, under the applicable standard, and will therefore order that he remain detained pending trial.

## I.   STANDARD OF REVIEW

In ruling on a motion for vacation or amendment to a magistrate judge's detention order, the court "must conduct an independent review to determine whether the magistrate judge properly found that pretrial detention is necessary." *United States v. King*, 849 F.2d 485, 490 (11th Cir. 1988).  The court must provide written reasoning supporting its ruling if "1) the district court considers evidence which was *not* considered by

2

the magistrate [judge]; or 2) the district court adopts the magistrate [judge]'s recommendation that pretrial detention is necessary but finds that certain of the magistrate [judge]'s underlying conclusions or factual findings are incorrect or unsupported by the evidence." *Id.* Here, the court both considered evidence that was not considered by the magistrate judge and, despite affirming the detention order, disagrees with the magistrate judge's conclusion that Coley failed to rebut the presumption against him. Accordingly, the court fulfills its obligation to provide written reasoning as to its order through this opinion.

## II. LEGAL FRAMEWORK

Under the Bail Reform Act, this court must order Coley's detention if, after a hearing, it finds that "no condition or combination of conditions will reasonably assure [his] appearance ... as required and the safety of any other person and the community."  18 U.S.C. § 3142(e)(1).  The "dangerousness" necessary to

justify pretrial detention "has a much broader construction than might be commonly understood in everyday parlance." *King*, 849 F.2d at 487, n.2. It extends to non-physical harms, including "the danger that the defendant might engage in criminal activity to the detriment of the community." *Id.*

The government bears the burden of proving (1) by a preponderance of the evidence that no condition or conditions will reasonably ensure his appearance or (2) by clear and convincing evidence that no condition or conditions will ensure the safety of any other person and the community. *See United States v. Quartermaine*, 913 F.2d 910, 917 (11th Cir. 1990). A finding of "either danger to the community or risk of flight will be sufficient to detain the defendant pending trial." *King*, 849 F.2d at 488.

The court must consider four factors in making its detention determination: "(1) the nature and circumstances of the offense charged ...; (2) the weight of the evidence against the person; (3) the

history and characteristics of the person ...; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release." 18 U.S.C. § 3142(g).  The judicial officer is given "substantial latitude in determining whether pretrial detention is appropriate."  *King*, 849 F.2d at 487.

### III. DISCUSSION

Albeit for additional reasons, the court agrees with the magistrate judge's ultimate conclusion that the government has met its burden of proving, by clear and convincing evidence, that "no condition or combination of conditions will reasonably assure ... the safety of any other person and the community." 18 U.S.C. § 3142(e)(1).  Coley is charged with two counts: distribution of fentanyl resulting in death, 18 U.S.C. § 841(a)(1), which carries a sentence of not less than 20 years and not more than life; and possession with the intent to distribute fentanyl, 18

U.S.C. § 841(a)(1), which carries a sentence of not less than five years and not more than 40 years.

Based on the indictment and the evidence presented at two hearings, the court finds that there is probable cause that he has committed both offenses, each of which carries "a maximum term of imprisonment of ten years or more" under the Controlled Substances Act. 18 U.S.C. § 3142(e)(3)(A). Coley is, therefore, subject to the "rebuttable presumption" that no condition or combination of conditions will reasonably assure the safety of the community. *Id.* "[T]his statutory presumption imposes only the burden of production ... and does not shift the burden of persuasion." *King,* 849 F.2d at 48.

Departing from the magistrate judge's conclusion, this court finds that Coley produced sufficient evidence at the initial hearing to rebut the presumption. First, Coley highlighted that he has no criminal convictions whatsoever and only one prior arrest on a nonviolent, non-drug related charge dating

back a decade.  Second, he presented evidence that he was arrested on related state charges, then released on bond under certain conditions, and then he complied with those conditions without issue for approximately three months before being arrested on the pending federal charges.  Third, he presented evidence that he was gainfully and productively employed with a faith-based program in between his state and federal arrests.  Fourth, the probation officer that conducted his pretrial services assessment testified that the objective tool used in measuring risk indicated that Coley was not a risk and the tool counseled in favor of Coley's release.  Transcript (Doc. 16) at 8.  All of which considered together satisfies Coley's relatively light burden of production to rebut the presumption that he is sufficiently dangerous to warrant detention by sole virtue of the charges against him.  That is, Coley presented evidence, as required, "*to suggest* that he is either not dangerous or not likely to flee if turned loose on bail."  *United States v. Hurtado*, 779

F.2d 1467, 1479 (11th Cir. 1985) (emphasis added).
Therefore, the court disagrees with the magistrate
judge's conclusion that Coley "had not rebutted the
presumption on the issue of whether he poses a risk of
danger." Detention Order (Doc. 15) at 2.

Nonetheless, even where the presumption is
rebutted, detention is warranted if the government
satisfies its burden of persuasion by showing through
clear and convincing evidence that no condition or
conditions will ensure the safety of any other person
and the community. *See Quartermaine*, 913 F.2d at 916–
17 (reiterating that the burden of persuasion remains
on the government regardless of the application of the
presumption). The court believes that the government
has met its burden of establishing Coley's
dangerousness. That is, for the reasons outlined in
the magistrate judge's order, and the additional and
overlapping reasons outlined below, the court concludes
that the government has shown, by clear and convincing
evidence, that Coley poses a substantial risk of

8

continuing to engage in drug trafficking absent detention. *See King*, 849 F.2d at 487 n.2 ("[T]he risk that a defendant will continue to engage in drug trafficking constitutes a danger to the safety of any other person or the community." (internal quotations omitted)).

First, there is the rebuttable presumption, which remains by itself "an evidentiary finding militating against release," even if it is rebutted, as here. *Quartermaine*, 913 F.2d at 916; *see also King*, 849 F.2d at 488 (noting that the word "rebut" in this context "is somewhat of a misnomer because the rebutted presumption is not erased") (internal quotations omitted).

Second, based on additional evidence brought forward at the second detention hearing, the court finds that the government has established by clear and convincing evidence that Coley knowingly dealt fentanyl (as opposed to dealing pills he incorrectly believed contained oxycodone). It was unclear, based on the

initial hearing, whether Coley knew he was distributing fentanyl. Indeed, the evidence at the initial hearing established that the drugs in question were counterfeit blue M30 oxycodone pills, or pills disguised to look like oxycodone but in fact contained fentanyl. The initial record failed to indicate that Coley himself was not duped by the counterfeit nature of the pills. But, at the second hearing, evidence was presented that establishes that Coley was aware he was distributing fentanyl. Specifically, the government presented evidence that it has become general knowledge throughout the market that blue M30 pills sold on the street contain fentanyl. Because the evidence shows Coley knew he was selling fentanyl, the court can infer a greater risk of danger from fentanyl and that he is more likely to resume selling drugs if released because he knowingly decided to sell one of the world's most dangerous drugs. His indifference to the lethal dangerousness of his conduct weighs heavily with the court.

Third, as the magistrate judge noted at length, the dangerousness of fentanyl is exceptional, even when compared to other exceptionally dangerous drugs. Detention Order (Doc. 15) at 5–7; *see also United States v. Brown*, 538 F. Supp. 3d 154, 170 (D.C. 2021) (Lamberth, J.) ("Fentanyl, a synthetic opioid, is 50 to 100 times more potent than morphine and 50 times more potent than heroin ... Given that those who use fentanyl ... risk serious bodily injury or death, the danger posed to the [community] by [the defendant's] pre-trial release would be great." (internal quotations omitted)). That dangerousness is only heightened when distributed in the manner Coley allegedly distributed it. At the second detention hearing, the government presented evidence that counterfeit oxycodone tablets, like the ones Coley allegedly distributed, contain uncertain dosages of fentanyl because of uncontrolled, black-market manufacturing. For example, one pill could contain point-two milligrams of fentanyl while another identical pill may contain five milligrams.

11

While this may seem like a small variation, it is a life-and-death difference considering that just two milligrams of fentanyl is considered a potentially lethal dose. *See* Gov. Exhibit 3 (Doc. 24-7). That means that Coley was not just selling fentanyl, but he was selling fentanyl in uncertain, potentially lethal dosages, the consumption of which is like a game of Russian Roulette--take one and get high or take one and die. In fact, it is like a game of Russian Roulette with three bullets in the chamber because, according to the Drug Enforcement Agency, six out of every ten fake pills with fentanyl contain a potentially lethal dose. *See id.* And here, Coley is alleged to have sold a lethal dose that did in fact kill. Accordingly, the absurdly dangerous *type* of drug Coley allegedly sold weighs in favor of ongoing dangerousness to the community; likewise, the game-of-chance *way* in which Coley allegedly delivered that drug also heightens the danger posed if Coley were to resume.

Fourth, the evidence indicates that Coley was engaging in a long-term drug distribution trade that served as a substantial source of income. As the magistrate judge noted, the evidence presented indicated that Coley "had been supplying the deceased victim with narcotics for well over a year," bringing in over 20 thousand dollars from the deceased alone. Order (Doc. 15) at 7–8. Put differently, the charges here do not reflect an "aberration or momentary lapse in judgment." *Id.* Indeed, 70 fentanyl tablets (pressed to look like oxycodone) were found in an unlocked drawer in his residence. In that small drawer alone, he had the capacity to cause the deaths of 70 unsuspecting humans. Accordingly, the evidence shows that Coley was a fentanyl dealer with a long-term, lethal operation that provided a substantial amount, if not the lion's share, of his income. Indeed, one person has already died from his actions, and he continued to sell the drug even after that death. He was not a one-off fentanyl dealer making a lone, deadly

mistake.   Just the opposite.   This history heightens his risk of returning to the trade if he is released.

Fifth, and finally, Coley's personal characteristics indicate that he poses a heightened risk to the community if released. *See* 18 U.S.C. § 3142(g)(3).   Specifically, Coley is college educated and he was not selling to support his own substance use.   Accordingly, he allegedly engaged in the fentanyl-distribution trade as a calculated dealer, primarily motived by money, and therefore he poses a heightened risk to the community as opposed to someone who engaged in drug distribution that was driven by intellectual deficiencies, mental health conditions, or addiction.   In short, the evidence indicates he knew better and nevertheless sold dangerous drugs.   The court is unpersuaded that it could order a condition that would reasonably assure Coley would stop selling fentanyl if released.

Coley offers evidence that he argues demonstrates he does not pose a danger to the community.   And the

court considered this evidence in determining that he met his burden of *production* to rebut the presumption that he was dangerous.  However, Coley's evidence fails to *persuade* the court that the government failed to carry its burden of persuasion.  Here's why.

First, while Coley has almost no formal criminal history, the evidence establishes that he was engaged in a pattern of criminal conduct for at least a year--therefore, this evidentiary history of actual criminal conduct heightens risk, even when the documented history is clean.  Second, while Coley was released on bond on state charges, those charges did not include an allegation that his conduct resulted in death, like it does here.  Third, while Coley was employed for three months in between state and federal arrests, the court is unpersuaded that Coley did not pose an ongoing danger during that time, even if no violations were discovered.  Fourth, while the tool used in the pretrial services report found he was a low risk, that tool was employed without the full scope of

evidence that has been presented to the court in not one, but two detention hearings. Moreover, probation did ultimately recommend detention despite the tool's outcome. And finally, the court considers that there has not been evidence of a firearm in Coley's possession, which is a hallmark consideration for dangerousness. The court is not moved by this absence though because the government presented evidence that fentanyl is as dangerous if not more dangerous to the community than firearms.

Coley nonetheless argues that there are conditions or a combination of conditions that will reasonably assure the safety of the community. Specifically, he suggests that drug testing and home confinement would address any danger he posed to the community. However, drug testing is a nonstarter because, as stated, his conduct was not driven by substance-abuse issues. Similarly, the court is unpersuaded that home confinement would provide reasonable assurance of safety from fentanyl distribution because the

government presented evidence that Coley had been facilitating fentanyl distribution from his home--the very home where he lived with wife and eight minor children, all of whom could have easily accessed the unlocked drawer where law enforcement agents found the 70 fentanyl pills. The court has considered other alternative conditions as well, but finds none of them sufficient, based on the evidence, to reasonably assure the community's safety from Coley returning to the fentanyl distribution trade. That leaves only pre-trial detention.

Two overarching points counsel the court's conclusion that pre-trial detention is necessary. First, Coley showed complete indifference to the deadliness of his conduct. The court is convinced that the likelihood of his repeating the conduct is high. Second, this is a case where the risk attendant to pretrial release is very high. If Coley were to violate the conditions of pretrial release even once by again engaging in the charged conduct, the results

could lead to *another* death. Merely revoking his pretrial release would not be enough. These two factors, the likelihood of violation and the deadly risk that would attend even one violation convinces the court that the proposed conditions here are not sufficient to assure the needed level of protection for the community from the high risk posed.

To be clear though, the court's conclusion here is not based solely on the fact that Coley is charged with crimes relating to the distribution of fentanyl. Indeed, the court disagrees with the magistrate judge's indication that the pending charges alone are "sufficient to justify pre-trial detention" before accounting for non-offense circumstances. Detention Order (Doc. 15) at 5. While fentanyl itself poses an extreme danger and is an important consideration, cases may arise where detention is *not* warranted on fentanyl-related charges subject to the presumption when considering the specific circumstances of the alleged offense, the defendant, and the evidence.

Here, however, the court believes the government has met its burden by presenting additional evidence, when considered against all the factors outlined in 18 U.S.C. § 3142(g), establishing that Coley specifically poses a danger of returning to a deadly drug trade absent detention. As stated, among these specific, tailored considerations are that: (1) Coley is a drug dealer of fentanyl, not a fentanyl addict; (2) fentanyl by itself is dangerous but that danger is heightened by the perverse, game-of-chance way Coley allegedly distributed it; (3) Coley knowingly engaged in a long-term, widespread, lethal drug distribution trade, which served as a primary basis for his income, and he did so despite having a college education; (4) one person has already died from his actions; and (5) Coley continued to sell the drug even after that death had resulted. Coley's dealings were not a one-off mistake or a result of substance abuse, a mental health condition, an intellectual disability, or some other

19

specific circumstance that could be readily addressed by conditions.

The finding that the government met its burden as to Coley's dangerousness absent detention is sufficient to mandate his detention. *See* 18 U.S.C. § 3142(e)(1). Consequently, the court need not address whether the magistrate judge correctly found that the government satisfied its burden as to flight risk. Regardless, the government admitted at the second detention hearing that the government was not arguing flight risk on appeal, just Coley's dangerousness.

Applying the four factors outlined in 18 U.S.C. § 3142(g), including (1) the nature and circumstances of the offense charged, (2) the weight of the evidence against the person, (3) the history and characteristics of the person, and (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release, the court is convinced that Coley is a deadly drug dealer and that no

conditions of pretrial release are adequate to protect society from him as he awaits trial.

***

Accordingly, it is ORDERED that:

(1) Defendant Lawrence Coley, III's motion (Doc. 17) is denied to the extent he seeks to have the detention order reversed or revoked.

(2) The magistrate judge's detention order (Doc. 15) is affirmed, albeit for the different and additional reasons outlined in this opinion.

(3) Defendant Coley shall remain detained pending resolution of the charges against him or further order of the court.

DONE, this the 5th day of May, 2023.

    /s/ Myron H. Thompson
UNITED STATES DISTRICT JUDGE